MITCHELL *v.* MITCHELL.

5-2086                                333 S. W. 2d 741

Opinion delivered April 4, 1960.

*Herrn Northcutt,* for appellant.

*Murphy & Arnold, Oscar Ellis,* for appellee.

PAUL WARD, Associate Justice. This litigation is an effort on the part of appellants (heirs of N. W. Mitchell) to cancel a deed which N. W. (Nathe) Mitchell executed to his son, conveying 160 acres of land in Fulton County, Arkansas. The trial court refused to cancel the deed and appellants prosecute this appeal.

N. W. Mitchell had lived for many years on his 160-acre farm in Fulton County, where, apparently, his oldest son Vergal Mitchell (by his first wife) was born and reared to manhood. After the death of his first wife Mitchell married again and of that union a son, Frank Mitchell, was born—his last wife having died in 1951. It also appears that Vergal Mitchell left Arkansas, married and established a home in Earlsboro, Oklahoma, and that sometime thereafter his half brother, Frank Mitchell, became a resident of Michigan. After Nathe Mitchell's wife died in June of 1951 it appears that he decided to deed his farm to his son, Vergal Mitchell, on condition that his son take care of him the remainder of his life. The deed was executed on March 12, 1952, and soon thereafter Nathe Mitchell went to

live with his son, Vergal, in Oklahoma where he resided for a total of some ten to fifteen months. However, between the time that Nathe Mitchell went to Vergal's home in Oklahoma and the time of his death in January of 1954 he made numerous trips back to his old homestead in Fulton County.

The Complaint was filed by appellant, Frank Mitchell and three other people who apparently were all of the heirs (except Vergal Mitchell) of N. W. Mitchell, against the defendant Vergal C. Mitchell (the son of N. W. Mitchell by his first wife). In substance the Complaint states: On the 12th day of March 1952 N. W. Mitchell by Warranty Deed conveyed to the defendant, Vergal Mitchell, the subject lands in Fulton County; the consideration for said deed was "that, the defendant should provide care for the deceased for the remainder of his life, that the defendant was to furnish food, and medical and doctor's care also for that time"; that defendant failed to comply with the consideration expressed in the deed (a copy being attached); that at the time of the execution of the deed "the defendant exercised considerable influence and had the trust of said N. W. Mitchell and occupied a favorable position in his confidence"; that at the time of the execution of the deed the said N. W. Mitchell was of such advanced age, mentally and physically impaired, that he was incapable of transacting business and executing the deed; and that the said N. W. Mitchell was subjected to duress, force and threat by the defendant. The prayer was that the deed be cancelled and that the defendant be required to account for all rents derived from the land. After several motions and other pleadings were filed and disposed of the defendant filed a general denial.

After the pleadings were made up Vergal C. Mitchell died and on motion of appellants the widow and children of Vergal Mitchell were substituted as defendants and are the appellees in this appeal.

Appellants in their Designation of the Record and Points to be Relied Upon on this appeal included this

statement: ''Plaintiffs (appellants) are relying upon the following point: 'that the defendant, Vergal Mitchell, deceased, failed to comply to the consideration expressed in the deed' ''. Appellants, in urging this Court to reverse the trial court rely upon two points which as we understand them are as follows: (1) That the deed was fraudulently procured by Vergal Mitchell, and, (2) Vergal Mitchell did not discharge the obligations imposed upon him by the deed.

Before discussing the testimony it is first in order to determine just what issues are presented by this appeal.

Appellees' contention, as we understand it, is that appellants (as the heirs of N. W. Mitchell) cannot maintain this action on the basis that Vergal Mitchell did not live up to his implied promise to take care of N. W. Mitchell during his lifetime. In support of this contention they rely upon a statement made by this Court in *Cannon* v. *Owens*, 224 Ark. 614, 275 S. W. 2d 445. This is the statement: ''It is true when a promise of future support is made in good faith, the cause of action for its breach is personal to the promisee and cannot be asserted by his heirs'', citing *Priest* v. *Murphy*, 103 Ark. 464, 149 S. W. 98 and *Jeffery* v. *Patton*, 182 Ark. 449, 31 S. W. 2d 738. This contention must fail in this case, however, because the deed in question is not based upon a promise by the Grantee (Vergal Mitchell) to support the Grantor during his lifetime, but the duty to support N. W. Mitchell during his lifetime is a condition upon which the deed was executed. The deed in question is a regular Warranty Deed. The Grantor was N. W. Mitchell, a single man, and the consideration was $1.00 and other considerations. The Grantee was Vergal C. Mitchell. After the description of the land there appears the following: ''This deed is made on the condition that the GRANTEE herein is to provide and care for the GRANTOR herein during the remainder of his life, furnishing food, clothing, medical and doctor's care''. In the *Cannon* case, *supra*, the opinion states: ''That the appellants were named as remaindermen in return for

their *promise* to support Mrs. Vannatter for the rest of her life . . ." (Emphasis Supplied). It appears, therefore, in the *Cannon* case the deed was based on a promise and not a condition. In the *Priest* case, *supra,* there is this statement: "If their father had made the grant in *consideration* of his own support, he could, upon a proper showing, have had the deed cancelled for a failure of such consideration; and if it had been made on such *condition,* he or they, his *heirs,* upon the condition broken, could have set it aside, but the grantor did not think it necessary to convey the property upon condition . . ." (Emphasis Supplied). To the same effect is the holding in the *Jeffery* case, *supra,* which is clearly shown by the following statement in the opinion: "If the consideration for the deeds was an undertaking on the part of the grantees to support and maintain the grantor, their father, for the remainder of his life and there was a failure on their part to comply with the undertaking, the grantor himself could have sued at law for the amount of the consideration after it became due, or treated the contract as void and brought suit in equity to cancel and set it aside for failure of consideration. If the conveyances had been made on such *conditions,* he or his heirs upon the condition broken could have set it aside". (Emphasis Supplied). We agree, therefore, with appellants that they (as heirs of N. W. Mitchell) would have a right to set the deed aside upon showing that the conditions of the deed were not complied with. We point out also, as is conceded by appellees, that appellants would have a right to set the deed aside upon showing that it was procured by fraud on the part of Vergal Mitchell, and, further, that any failure on the part of Vergal Mitchell to comply with the conditions of the deed might be considered as some evidence of fraud. See the opinion in the *Cannon* case, *supra.*

The appellants alleged in their petition, as heretofore pointed out, that Vergal Mitchell secured the deed from his father by the exercise of undue influence at a time when his father was mentally and physically

impaired. We will not discuss that ground for reversal separately because there is little if any evidence to support it and also because appellants appear to have waived it in their argument.

After a hearing upon the testimony produced by both sides the Trial Judge found that the preponderance of the evidence shows that Vergal Mitchell did not practice any fraud upon his father in the procurement of the deed and also that the preponderance of the evidence shows that there was no failure of consideration. Our analysis of the testimony as hereafter summarized leads us to agree with the findings of the Chancellor.

N. W. Mitchell's children all moved away and left him and he lived alone after the death of his second wife in 1951. In 1926 Vergal went to Earlsboro, Oklahoma, where he and his family resided until his death, and his half brother, Frank Mitchell, became a resident of Michigan. Some four months after the death of his second wife N. W. Mitchell (sometimes referred to as "Nathe") was taken by Vergal to his home in Oklahoma where he remained until some time in February of 1952 when he returned home. At that time Nathe was approximately 82 years of age. There were approximately 25 acres of land in cultivation on the farm which was probably worth $3,000.00 or $4,000.00. On or about March 11th Vergal, being informed that his father wanted to return to Earlsboro, came to Arkansas to get him. On the 12th day of March Nathe told his nephew that he was going to make Vergal a deed to the old home place, stating that he had rather live on the old home place but he could not ask Vergal to quit his job and come to Arkansas. Nathe also stated "It looks like there's not anybody else going to take care of me from now on . . ." Pursuant to that decision Nathe had his nephew to take Vergal and himself to Salem for the purpose of making the deed, which was drawn up and executed in the office of one Orval Benton, an abstracter and former County Treasurer and State Representative of Fulton County. Mr. Oscar Ellis, a long time friend and often an attorney for Nathe, was present and dic-

tated much of the language that was used in the deed. After the deed was executed and recorded the same day all parties returned to Nathe's home place and within a few days thereafter Vergal took his father to his home in Earlsboro, Oklahoma. From the day of the execution of the deed until Nathe's death in January of 1954 Nathe actually spent approximately two-thirds of his time with Vergal in his home at Earlsboro, Oklahoma. Several times Nathe would make trips back to the old home place, stay a while and then return to Earlsboro. On each of these occasions he was transported both ways by Vergal at Vergal's expense. Not only is there no intimation in the record that Vergal or his family in any way mistreated his father but the uncontradicted testimony is that Nathe was well pleased with the treatment he had received. He once stated that they treated him too good. There is nothing in the record to show Vergal and his family were not ready and willing to keep Nathe in their home at all times and to look after him in a proper manner. There is no showing that any of Nathe's relatives did anything for him in a material way except what was done by his son, Vergal.

The only one of the appellants to testify was Frank Mitchell, the half brother of Vergal Mitchell. In substance he stated that on one or more occasions his father paid his way back to the old home place and on one occasion his father stated that Vergal was "sassing" him and that he did not want to live with Vergal but wanted to live at the old home place and that it was costing him too much to live at Vergal's house. However, the testimony of the other witnesses and the statements made by Nathe himself do not corroborate Frank Mitchell's testimony.

There is nothing in the record which indicates in any way that Vergal Mitchell practiced any fraud upon his father in the procurement of the deed. On the whole we are unable to say that the findings of the Chancellor

in favor of appellees are against the weight of the evidence.

Affirmed.

McFADDIN, J., concurs.

JOHNSON, J., dissents.